# **Exhibit A**

<table>
<tr><td>DISTRICT COURT, DENVER COUNTY, COLORADO<br><br>1437 Bannock Street<br>Denver, CO 80203</td><td rowspan="2">DATE FILED<br>March 27, 2026 11:50 AM<br>FILING ID: 25E2B77F69A52<br>CASE NUMBER: 2026CV31102<br><br>▲ COURT USE ONLY ▲</td></tr>
<tr><td>PLAINTIFF: JAMES GASKINS, on behalf of himself and all others similarly situated,<br><br>v.<br><br>DEFENDANT: INTERACTIVE DATA, LLC and FOREWARN, LLC</td></tr>
<tr><td>Attorneys for Plaintiff:<br><br>PELUSO LAW LLC<br>Patrick H. Peluso (#47642)<br>865 Albion Street, Suite 250<br>Denver, CO 80220<br>Telephone: (720) 805-2008<br>Facsimile: (720) 336-3663<br>Email: ppeluso@pelusolawfirm.com<br><br>BURSOR & FISHER, P.A.<br>Joseph I. Marchese (pro hac vice application forthcoming)<br>1330 Avenue of the Americas, 32nd Floor<br>New York, NY 10019<br>Telephone: (646) 837-7150<br>Facsimile: (212) 989-9163<br>Email: jmarchese@bursor.com<br><br>[Additional counsel on signature page]</td><td>Case Number:<br><br><br>Courtroom:</td></tr>
<tr><td colspan="2"><u>CLASS ACTION COMPLAINT AND JURY DEMAND</u></td></tr>
</table>

## COLO. REV. STAT. § 13-17-201 STATEMENT

Plaintiff, pursuant to Colo. Rev. Stat. § 13-17-201, pleads that all claims asserted herein are made in good faith and are non-frivolous, and are filed for the express purpose of establishing the meaning, lawfulness, and/or constitutionality of a law, regulation, or constitutional right, specifically Colorado's "Prevention of Telemarketing Fraud Act" or "PTFA". The meaning, lawfulness, or constitutionality of PTFA has not been determined by the Colorado Supreme Court and the issues presented herein are matters of first impression.

Plaintiff James Gaskin ("Plaintiff"), individually and on behalf of all others similarly situated, brings this Class Action Complaint for violations of Colo. Rev. Stat. § 6-1-304 (Colorado's "Prevention of Telemarketing Fraud Act" or "PTFA") against Defendants Interactive Data, LLC ("Interactive Data") and Forewarn, LLC ("Forewarn") (collectively, "Defendants"). Plaintiff makes the following allegations pursuant to his counsel's investigation and based upon information and belief, except as to allegations specifically pertaining to himself, which are based on personal knowledge.

## NATURE OF THE ACTION

1. On May 27, 2005, former Colorado Governor Bill Owens signed into law HB05-1288,[1] which amended the PTFA to prohibit commercially listing a cell phone number in a directory, without permission.[2] *See* Colo. Rev. Stat. § 6-1-304(4)(a)(I).

2. This prohibition is designed to protect privacy. As former State Representative Mark Cloer,[3] a prime sponsor of HB05-1288,[4] stated in describing this new portion of the PTFA: "[m]ost people view their cell phones as private. They give out the number to friends and family and some colleagues. When their cell phone rings, they expect it to be important."[5]

3. Indeed, concern over cell phone privacy is widespread. According to a research paper presented in May 2005 at the American Association for Public Opinion Research (AAPOR)'s Annual Conference[6] and January 2006 at the American Statistical Association (ASA)'s Second International Conference on Telephone Survey Methodology:[7]

> [T]here appears to be a strong reluctance on the part of cell phone owners to have their cell phone numbers listed in a directory. …
>
> This reluctance on the part of respondents to have their cell phone number

[1] https://www.leg.state.co.us/clics2005a/csl.nsf/fsbillcont2/1BB0D3E00348AC6987256F90007C20C7?Open. *See also* https://scholar.law.colorado.edu/cgi/viewcontent.cgi?article=3081&context=session-laws-2001-2050.

[2] https://www.leg.state.co.us/CLICS2005A/commsumm.nsf/IndSumm/574E34C489356ADA87256FB100612E60?OpenDocument. *See also* https://www.leg.state.co.us/CLICS2005A/commsumm.nsf/91320994cb8e0b6e8725681d005cb995/574e34c489356ada87256fb100612e60?OpenDocument.

[3] *See* https://www.leg.state.co.us/clics2005a/directory.nsf.

[4] https://scholar.law.colorado.edu/cgi/viewcontent.cgi?article=3289&context=session-laws-2001-2050 at p. 2461. *See also* https://www.leg.state.co.us/CLICS2005A/csl.nsf/StatusAll?OpenFrameSet.

[5] https://www.9news.com/article/news/local/politics/legislative-library-feb-23-2005/73-344789916.

[6] https://aapor.org/wp-content/uploads/2024/05/AAPORPrograms2005.pdf at pp. 13, 84.

[7] https://scholar.google.com/citations?view_op=view_citation&hl=en&user=I2jkzr0AAAAJ&citation_for_view=I2jkzr0AAAAJ:M3ejUd6NZC8C; https://ww2.amstat.org/meetings/tsmii/2006/index.cfm?fuseaction=main.

> listed in a directory may be rooted in not wishing to incur additional costs due to unsolicited incoming calls. …
>
> A more likely reason for their unwillingness to have their cell phone number listed is that respondents view the cell phone as more of a private medium of communication than their land-line phone. They probably wish to restrict access to their cell phone number to family and friends.[8]

4. The Colorado General Assembly enacted subsection (4) of the PTFA to address these privacy concerns and to protect cell phone users from the misappropriation of their personal information. This aligns with the PTFA's overall purpose, as articulated by Colo. Rev. Stat. § 6-1-301:

> The general assembly hereby finds, determines, and declares that the use of telephones for commercial solicitation is rapidly increasing; that this form of communication offers unique benefits, but entails special risks and poses the potential for abuse; that the general assembly finds that the widespread practice of fraudulent and deceptive commercial telephone solicitation has caused substantial financial losses to thousands of consumers, and, particularly, elderly, homebound, and otherwise vulnerable consumers, and is a matter vitally affecting the public interest; and, therefore, that the general welfare of the public and the protection of the integrity of the telemarketing industry requires statutory regulation of the commercial use of telephones.

5. Colo. Rev. Stat. § 6-1-304(4) provides, in pertinent part:

> (a) On or after September 1, 2005, a person commits an unlawful telemarketing practice if the person knowingly:
>
> (I) Lists a cellular telephone number in a directory for a commercial purpose unless the person whose number has been listed has given affirmative consent, through written, oral, or electronic means, to such listing[.]

6. Despite this abundantly clear proscription, Defendants have listed the cellular telephone numbers of thousands of Colorado residents in its for-sale and for-profit directories, without requesting (let alone actually receiving) affirmative consent to such listings.

7. Thus, while Defendants profit handsomely from their unauthorized commercial listing of Plaintiff's and other Class Members' personal information, they do so at the expense of Coloradans' statutory privacy rights, under the PTFA.

8. Not only is Defendants' misappropriation unlawful – it is also dangerous. The

[8] http://www.asasrms.org/Proceedings/y2005/files/JSM2005-000345.pdf at p. 4005.

Federal Trade Commission's ("FTC") report on "Data Brokers" states:

> There are a number of potential risks to consumers from data brokers' collection and use of consumer data. … [T]hey may facilitate the sending of advertisements … which some consumers may find troubling and which could undermine their trust in the marketplace. Moreover, … people search products can be used to facilitate harassment, or even stalking, and may expose domestic violence victims, law enforcement officers, prosecutors, public officials, or other individuals to retaliation or other harm. [In addition, s]toring [d]ata [a]bout [c]onsumers [i]ndefinitely [m]ay [c]reate [s]ecurity [r]isks[.][9]

9. Plaintiff brings this action to prevent Defendants from further violating the privacy rights of Colorado cell phone users and to recover statutory damages from Defendants, pursuant to Colo. Rev. Stat. § 6-1-305(1)(c).

## PARTIES

10. Plaintiff James Gaskins is, and has been at all relevant times, a resident and citizen of Aurora, Colorado. Plaintiff's cellular telephone number was listed by Interactive Data and Forewarn in their respective directories to advertise products and services and/or pursuant to Defendants' provision of their paid subscription services. Defendants never requested – and Plaintiff never provided – affirmative consent, through written, oral, or electronic means, to such listings. In fact, Plaintiff has no relationship with Defendants whatsoever, and, to date, has never used Defendants' directories. Plaintiff had never heard of Defendants and had no reasonable ability to discover Defendants' use of his personal information until shortly before filing suit.

11. Defendant Interactive Data, LLC is a Delaware limited liability company with its principal place of business at 2650 North Military Trail, Suite 300, Boca Raton, Florida 33431. Defendant is primarily engaged in the business of selling or leasing goods or services. Specifically, Defendant operates the directory idicore.com.[10] Therein, and for commercial purposes, Defendant has listed the cellular telephone numbers of thousands of individuals whom it knows to reside in Colorado.

12. Defendant Forewarn, LLC is a Delaware limited liability company with its principal place of business at 2650 North Military Trail, Suite 300, Boca Raton, Florida 33431. Defendant is primarily engaged in the business of selling or leasing goods or services. Specifically, Defendant operates the directory app.forewarn.com.[11] Therein, and for commercial purposes, Defendant has listed the cellular telephone numbers of thousands of individuals whom

[9] https://www.ftc.gov/system/files/documents/reports/data-brokers-call-transparency-accountability-report-federal-trade-commission-may-2014/140527databrokerreport.pdf at p. 48.

[10] Also available on iOS and Android. *See* https://apps.apple.com/us/app/idicore/id1602693758; https://play.google.com/store/apps/details?id=com.idicore.

[11] Also available on iOS and Android. *See* https://apps.apple.com/us/app/idicore/id1602693758; https://play.google.com/store/apps/details?id=com.idicore.

it knows to reside in Colorado.

13. On information and belief, Interactive Data, LLC and Forewarn, LLC are both subsidiaries of Delaware corporation Red Violet, Inc.[12]

## JURISDICTION AND VENUE

14. The Court has subject matter jurisdiction pursuant to Colo. Const. Art. VI, § 9.

15. The Court has personal jurisdiction over Defendant pursuant to Colo. Rev. Stat. § 13-1-124(1)(a) because Defendants transact business in Colorado. The Court also has personal jurisdiction over Defendants pursuant to Colo. Rev. Stat. § 13-1-124(1)(b). Defendants' tortious conduct – listing the cellular telephone numbers of thousands of individuals whom Defendants know to reside in Colorado, without requesting or receiving said individuals' affirmative consent – caused injury in Colorado and thus constituted a tort here.

16. Venue is proper in this Court pursuant to Colo. R. Civ. P. 98(c)(1), which permits trial of this action in the county of Plaintiff's choice, as Defendants are not residents of Colorado. *See* Colo. R. Civ. P. 98(c)(1) ("if the defendant is a nonresident of this state, the [action] may be tried … in the county designated in the complaint[.]").

## COMMON FACTUAL ALLEGATIONS

### I. Overview of Defendants' Directory

17. Defendants are data brokers – companies "that collect[s] consumers' personal information and resell[s] or share[s] that information with others[.]"[13]

18. Specifically, Defendants provide online "people search" (also known as "people finder") services. People search companies, like Defendants, specialize in compiling vast amounts of information about individuals from various sources.[14] Defendants further explain who their customers are and how customers use Defendants' data:

- "Without the right data solution, frequent changes in addresses, phone numbers, and employers can often lead to fragmented contact data. This can bring your search to a halt and risk your bottom line. … [O]ur data covers nearly 100 percent of the U.S. adult population. Quickly find the appropriate people and assets with our powerful skip tracing solution: idiCORE. You'll be able to promptly identify the location and contact information of your subject through an intuitive online interface. The

[12] *See, e.g.*, https://www.sec.gov/Archives/edgar/data/1720116/000119312518062230/d528710dex211.htm; https://investors.redviolet.com/static-files/c5586652-744a-41ff-982c-945d17ae5c85.

[13] https://www.ftc.gov/system/files/documents/reports/data-brokers-call-transparency-accountability-report-federal-trade-commission-may-2014/140527databrokerreport.pdf at p. i.

[14] https://consumer.ftc.gov/articles/what-know-about-people-search-sites-sell-your-information.

user-friendly platform enables easy search options to locate a debtor's phone numbers, addresses, relatives, associates, assets, and more."[15]

- "Enhancing customer engagement through data-driven personalization[.] … Data-driven insights form the foundation of authentic customer experiences. By leveraging IDI's expansive consumer identity graph, marketers can access deep, actionable insights about their audience, allowing for precise segmentation and more impactful messaging."[16]

- "At FOREWARN, we bring knowledge to the real estate industry through innovative solutions[.] … Leveraging powerful analytics and a massive data repository, our solutions enable real estate professionals to gain real-time knowledge, for purposes such as verifying identity, searching for criminal histories, and validating information provided by potential clients such as financial and asset information."[17]

- "Download the FOREWARN app for instant due diligence: Positively identify/verify over 80% of prospects[.] Identify if your prospect has a criminal history[.] Verify current asset ownership[.] Verify financial risks[.][18]

19. Defendants and their competitors monetize people's personal details through their directories – some of which are ad-supported and give users free access to the data, and others of which furnish reports about people for a fee.

20. Defendants' directories are available at idicore.com and app.forewarn.com (and Interactive Data and Forewarn's associated mobile applications). There, Interactive Data and Forewarn users can view Coloradans' cell phone numbers, addresses, and more.

21. This is achieved by simply searching an individual by name, city, state, address, and/or other parameters:[19]

---

[15] https://www.ididata.com/blog/tax-season-tips-optimizing-debt-recovery-efforts/.

[16] https://www.ididata.com/blog/enhancing-customer-engagement-through-data-driven-personalization/.

[17] https://www.forewarn.com/news/forewarn-partners-with-berkshire-hathaway-homeservices-colorado-properties/.

[18] https://app.apple.com/us/app/forewarn/id275626154;
https://play.google.com/store/apps/details?id=com.

[19] Here and in the subsequent paragraphs, images pertaining to Interactive Data appear first and images pertaining to Forewarn appear second. Note, in subsequent images, certain personal information has been redacted (black portions).







22. After entering this information, Interactive Data and Forewarn users are furnished with a list of search results. Each result corresponds to an actual person that Defendants have located who matches the parameters searched. Interactive Data search results include searched individuals' cell phone number(s). Both Interactive Data and Forewarn search results include a plethora of other identifying information:







23. Upon selecting a particular person to investigate from the search results, Interactive Data and Forewarn users can access a complete profile of the person, including their cell phone number(s), address, age, and other private details.










24. As the above images make clear, Defendants knowingly list Coloradans' cell phone numbers. Interactive Data has advertised that "idiCORE[] delivers best-in-class cell phone numbers, … all in one place[,]"[20]and a then-Interactive Data sales manager[21] has highlighted

---

[20] *See* https://www.linkedin.com/posts/interactive-data-llc_the-idi-team-is-ready-to-help-you-accelerate-activity-7381343070627196929-Od4d; https://archive.ph/ugLLf.

[21] *See* https://youtu.be/_u8MUAgbMOM?si=6zAcAcWjeG31bpET&t=108.

during a presentation that Interactive Data users "can see [] cell phones listed[.]"[22] Pages promoting Forewarn have stated that it provides "[p]hone numbers (residential and mobile[).]"[23] Further, Interactive Data and Forewarn appear to be supported by the same data infrastructure, as Red Violet states that "CORE, our identity intelligence platform, powers essential solutions through our leading brands, IDI and FOREWARN."[24] And Defendants do, in fact, provide phone numbers for cell phones belonging to individuals for whom Interactive Data and Forewarn include Colorado addresses."

25. Defendants list Plaintiff's and Class Members' cell phone numbers for a commercial purpose: (a) to entice individuals to pay to acquire access to Interactive Data and Forewarn subscriptions and/or credits;[25] and (b) to fulfill Defendants' obligations to individuals who have paid for Interactive Data and Forewarn subscriptions and/or credits. Indeed, that is Defendants' entire business model. Defendants are literally selling Plaintiff's and Class Members' cell phone numbers and accompanying information to their customers.

## II. Defendants' Conduct Harms Coloradans

26. Consumer data is key to the $26 billion-per-year online advertising industry in the United States.[26] Clearly, and per the FTC, consumer data possesses inherent monetary value:

> Most consumers cannot begin to comprehend the types and amount of information collected by businesses, or why their information may be commercially valuable. Data is currency. The larger the data set, the greater potential for analysis – and profit.[27]

27. In fact, individuals' private information has become such a valuable commodity

---

[22] *See* https://www.youtube.com/watch?v=_u8MUAgbMOM&t=1797s.

[23] https://nexusaor.com/forewarn; https://rayac.com/forewarn; https://www.gaar.com/blog/article/forewarn-verify-your-prospects-profile-any-criminal-history; https://gfwar.org/forewarn; *see also* https://www.floridarealtors.org/tool-research/forewarn.

[24] https://web.archive.org/web/20250809093842/https://www.redviolet.com/brands/

[25] Interactive Data does not make the precise prices of its subscriptions and/or credits publicly available, but several sources provide cost estimates. *See, e.g.*, https://sparkrental.com/are-there-free-skip-tracing-tools-for-real-estate-free-paid-tools-compared/ ("idiCORE[:] … You can sign up for a free trial (5 days or 50 searches), after which you must sign up for an annual membership. It ends up costing around $0.50–$1.00 per search depending on the plan you choose."); https://realestatebees.com/guides/software/skip-tracing/investors/ ("IDI Data is … $0.50 per skip trace."); https://diligentiagroup.com/legal-investigation/tlo-vs-irb-vs-idi-phone-number/ ("IDI cost $0.50 per search"). Forewarn's subscriber agreement indicates that it costs $25 per month. *See* https://archive.ph/QGfEE

[26] http://online.wsj.com/article/SB10001424052748703529004576160764037920274.html.

[27] https://www.ftc.gov/sites/default/files/documents/public_statements/remarks-ftc-exploring-privacy-roundtable/091207privacyroundtable.pdf at p. 2.

that companies now offer individuals the opportunity to monetize their personal data.[28]

28. These companies' business models capitalize on a fundamental principle underlying the modern information marketplace: Consumers recognize the economic value of their private data. Along these lines, research shows that consumers are willing to pay a premium to purchase services from companies that adhere to more stringent policies of protecting their data.[29] A 2014 survey conducted by Harris Interactive on behalf of TRUSTe, Inc. showed that 89 percent of consumers avoid doing business with companies who they believe do not protect their privacy.[30] The same is true for 80 percent of smartphone users, who say that they avoid using smartphone apps that they don't believe protect their privacy.[31]

29. Defendants' misappropriation of Coloradans' cell phone numbers undeniably deprives state residents of the ability to enjoy their PTFA privacy rights. It also deprives them of the real, quantifiable value of such data.

30. Further, "[p]eople search sites … offer a wealth of information that can be exploited by malicious actors."[32] For one, "[b]undling [personal data] all together and making it so easily accessible can … put ordinary people at risk of … stalking and other forms of harassment."[33] Second, people search sites' "comprehensive data allows cybercriminals to build detailed profiles of potential victims, making it easier to craft convincing scams or carry out identity theft."[34] This "put[s] almost anyone within the reach of fraudulent telemarketers[]" and other wrongdoers.[35]

31. Information disclosures like Defendants' are particularly dangerous to the elderly. "Older Americans are perfect telemarketing customers, analysts say, because they are often at home, rely on delivery services, and are lonely for the companionship that telephone callers

[28] *See, e.g.*, https://www.washingtonpost.com/technology/2023/02/06/consumers-paid-money-data/; http://www.nytimes.com/2012/02/13/technology/start-ups-aim-to-help-users-put-a-price-on-their-personal-data.html; https://techcrunch.com/2023/08/16/caden-lands-15m-to-let-users-monetize-their-personal-data/; https://www.theverge.com/2019/6/11/18661595/facebook-study-app-monitor-phone-usage-pay; https://sifted.eu/articles/gener8; https://www.theverge.com/2012/2/8/2785751/google-screenwise-panel-web-monitoring-knowledge-networks; https://www.sidehustlenation.com/get-paid-for-your-data/; https://millennialmoneyman.com/get-paid-for-your-data/.

[29] *See, e.g.*, https://web.archive.org/web/20250622135647/https://www.enisa.europa.eu/sites/default/files/publications/monetising_privacy.pdf; https://papers.ssrn.com/sol3/Delivery.cfm?abstractid=3305347.

[30] *See* https://web.archive.org/web/20190820142832/http://www.theagitator.net/wp-content/uploads/012714_ConsumerConfidenceReport_US1.pdf at p. 3.

[31] *Id.*

[32] https://www.foxnews.com/tech/dangerous-intersection-people-search-sites-scams.

[33] https://innovation.consumerreports.org/Data-Defense_-Evaluating-People-Search-Site-Removal-Services-.pdf.

[34] https://www.foxnews.com/tech/dangerous-intersection-people-search-sites-scams.

[35] http://www.nytimes.com/2007/05/20/business/20tele.html.

provide."[36] The FTC notes that "[t]he elderly often are the deliberate targets of fraudulent telemarketers who take advantage of the fact that many older people have cash reserves or other assets to spend on seemingly attractive offers."[37]

32. Making matters worse, "[o]nce marked as receptive to [a specific] type of scam, a consumer often is bombarded with similar fraudulent offers from a host of scam artists."[38]

33. Cell phone numbers are also a key piece of information for SIM swappers - hackers who take over a target's phone number in order to receive their calls and texts, which in turn can let them break into all manner of accounts. These sorts of hackers have been linked to countless hacks of individual people in order to, among other things, steal online usernames or cryptocurrency. Some have worked directly with ransomware gangs from Eastern Europe. Armed with a cell phone number, a SIM swapper may then impersonate the victim and convince their telecom provider to reroute text messages to a SIM card the hacker controls. From there, the hacker can request password reset text messages, or multifactor authentication codes, and log in to the victim's valuable accounts. This could include accounts at financial institutions, accounts that store cryptocurrency or, even more damaging, their email accounts, which in turn could grant access to many other accounts. For this reason, the FBI recommends on its website that people do not publicly advertise their phone number. "Protect your personal and financial information. Don't advertise your phone number, address, or financial assets, including ownership or investment of cryptocurrency, on social media sites," the site reads.[39]

## CLASS ALLEGATIONS

34. Plaintiff seeks to represent a class defined as all Colorado residents whose cell phone numbers were listed on one of Defendants' websites and/or mobile applications without their affirmative consent during the applicable statute of limitations period (the "Class").

35. Plaintiff reserves the right to modify the Class definition, including by using subclasses, as appropriate based on further investigation and discovery obtained in the case.

36. **Numerosity:** The Class is composed of at least thousands of individuals, the joinder of which in one action would be impracticable. The disposition of their claims through this class action will benefit both the parties and the Court.

37. **Existence and Predominance of Common Questions of Fact and Law:** There is a well-defined community of interest in the questions of law and fact involved affecting the members of the proposed Class. The questions of law and fact common to the proposed Class predominate over questions affecting only individual Class Members. Such questions include,

---

[36] *Id.*

[37] https://www.ftc.gov/sites/default/files/documents/public_statements/prepared-statement-federal-trade-commission-fraud-against-seniors/agingtestimony.pdf at p. 1.

[38] *Id.* at p. 3.

[39] https://www.wired.com/story/a-researcher-figured-out-how-to-reveal-any-phone-number-linked-to-a-google-account/; https://www.fbi.gov/contact-us/field-offices/phoenix/news/press-releases/fbi-tech-tuesday-sim-swapping.

but are not limited to, the following: whether Defendants violated Colo. Rev. Stat. § 6-1-304(4)(a)(I); and whether Plaintiff and Class Members are entitled to damages, reasonable attorneys' fees, pre-judgment interest and costs of this suit, pursuant to Colo. Rev. Stat. § 6-1-305(1)(c).

38. **Typicality:** The claims of the named Plaintiff are typical of the claims of the Class because Plaintiff, like all other Class Members, had her cell phone number listed by Defendants for a commercial purpose; Defendants did so without requesting or receiving Plaintiff's affirmative consent (through written, oral, or electronic means); and Defendants' misappropriation of Plaintiff's personal data (including the economic value thereof) came at the expense of Plaintiff's PTFA privacy rights.

39. **Adequacy:** Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the Class she seeks to represent, she has retained competent counsel experienced in prosecuting class actions, and she intends to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiff and her counsel.

40. **Superiority:** The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of the Class. Each individual Class Member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendants' liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendants' liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues. Finally, Defendants has acted or refused to act on grounds generally applicable to the entire Class, thereby making it appropriate for this Court to grant final injunctive relief and declaratory relief with respect to the Class as a whole.

## CAUSES OF ACTION

### COUNT I
### Violation of the Prevention of Telemarketing Fraud Act, Colo. Rev. Stat. § 6-1-304(4)(a)(I)

41. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

42. Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendants.

43. Colo. Rev. Stat. § 6-1-304(4) provides, in pertinent part:

(a) On or after September 1, 2005, a person commits an unlawful telemarketing practice if the person knowingly:

(I) Lists a cellular telephone number in a directory for a commercial purpose unless the person whose number has been listed has given affirmative consent, through written, oral, or electronic means, to such listing[.]

44. Defendants failed to comply with this PTFA mandate.

45. Defendants knowingly list Coloradans' cell phone numbers. Interactive Data has advertised that "idiCORE[] delivers best-in-class cell phone numbers, … all in one place[,]" and a then-Interactive Data sales manager has highlighted during a presentation that Interactive Data users "can see [] cell phones listed[.]" Pages promoting Forewarn have stated that it provides "[p]hone numbers (residential and mobile[).]" Further, Interactive Data and Forewarn appear to be supported by the same data infrastructure, as Red Violet states that "CORE, our identity intelligence platform, powers essential solutions through our leading brands, IDI and FOREWARN." And Defendants do, in fact, provide phone numbers for cell phones belonging to individuals for whom Interactive Data and Forewarn include Colorado addresses.

46. To "list" in this context means "to have or show (someone or something) as part of a list, register, or record." *See List,* Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/list.

47. Defendants' services, idicore.com and app.forewarn.com (both of which are also available on iOS and Android), are directories – i.e., an "electronic resource containing lists of information, usually in alphabetical order, for example people's phone numbers or the names and addresses of businesses in a particular area. *Directory*, Oxford Learner's Dictionary, https://oxfordlearnersdictionaries.com/us/definition/english/directory. [40]

48. Defendants list Plaintiff's and Class Members' cell phone numbers for a commercial purpose: (a) to entice individuals to pay to acquire access to Interactive Data and Forewarn subscriptions and/or credits; and (b) to fulfill Defendants' obligations to individuals who have paid for Interactive Data and Forewarn subscriptions and/or credits. Defendants are literally selling Plaintiff's and Class Members' cell phone numbers and accompanying information to their customers.

49. Defendants never request nor receive Coloradans' "affirmative consent, through written, oral, or electronic means, to such listing[.]" Colo. Rev. Stat. § 6-1-304(4)(a)(I). In fact,

[40] *See also Directory*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/directory ("an alphabetical or classified list (as of names and addresses)[.]"); *Directory*, Cambridge Essential American English Dictionary, https://dictionary.cambridge.org/us/dictionary/essential-american-english/directory ("a book or list of names and numbers"); *Directory*, AllWords.com Multi-Lingual Dictionary, https://www.allwords.com/word-directory.html ("A list of names, address etc., of specific classes of people or organizations, often in alphabetical order or in some classification.").

Defendants never request nor receive any consent whatsoever, affirmative or otherwise, to list cell phone numbers. Rather, Defendants list the cell phone numbers of Coloradans they have never engaged with, have had no connection to, and who are unaware of Defendants' existence

50. Defendants' misappropriation of Class Members' personal data (including the economic value thereof) came at the expense of Class Members' PTFA privacy rights. It deprived Class Members of the real, quantifiable value of such data. And it exposed Class Members to elevated risks of stalking, harassment, scams, identity theft, and unwanted telemarketing.

51. Thus, on behalf of himself and the Class, Plaintiff seeks: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class; (3) damages, pursuant to Colo. Rev. Stat. § 6-1-305(1)(c), of at least three hundred dollars and not more than five hundred dollars for each first offense, and at least five hundred dollars and not more than one thousand dollars for each second or subsequent offense; and (4) reasonable attorneys' fees and other litigation costs pursuant to Colo. Rev. Stat. § 6-1-305(1)(c).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the proposed Class, respectfully requests that this Court enter an Order:

A. Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff as the representative of the Class, and appointing Plaintiff's counsel as Class Counsel;

B. Declaring that Defendants actions, as set out above, violate Colo. Rev. Stat. § 6-1-304(4)(a)(I) (Colorado's "Prevention of Telemarketing Fraud Act" or "PTFA");

C. Awarding damages, pursuant to Colo. Rev. Stat. § 6-1-305(1)(c), of at least three hundred dollars and not more than five hundred dollars for each first offense, and at least five hundred dollars and not more than one thousand dollars for each second or subsequent offense;

D. Awarding injunctive and other equitable relief as is necessary to protect the interests of the Class, including, *inter alia*, an Order requiring Defendants to comply with the PTFA;

E. Awarding Plaintiff and the Class their reasonable attorneys' fees and other litigation costs pursuant to Colo. Rev. Stat. § 6-1-305(1)(c);

F. Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent allowable; and

G. Awarding such other and further relief as equity and justice may require.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury for all issues so triable.

Dated: March 27, 2026

Respectfully submitted,

**PELUSO LAW LLC**

*/s/ Patrick H. Peluso*
Patrick H. Peluso

Patrick H. Peluso (#47642)
865 Albion Street, Suite 250
Denver, CO 80220
Telephone: (720) 805-2008
Facsimile: (720) 336-3663
Email: ppeluso@pelusolawfirm.com

**BURSOR & FISHER, P.A.**
Joseph I. Marchese (*pro hac vice application forthcoming*)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: jmarchese@bursor.com

**BURSOR & FISHER, P.A.**
Matthew A. Girardi (*pro hac vice application forthcoming*)
50 Main Street, Suite 475
White Plains, NY 10106
Telephone: (914) 874-0708
Facsimile: (914) 206-3656
Email: mgirardi@bursor.com

*Attorneys for Plaintiff*