**EXHIBIT A**

2026 WL 3372124
Only the Westlaw citation is currently available.
United States District Court, D. Colorado.

William Kelsey HUTCHINGS, Jr., Barrie Dempsey, and Adam Holdridge, individually and as the representatives of a class of similarly- situated persons, Plaintiffs,
v.
LUSHA SYSTEMS, INC., Defendant.

Civil Action No. 1:25-cv-01908-CNS-NRN
|
Signed November 6, 2026

**Attorneys and Law Firms**

Patrick J. Solberg, Wallace C. Solberg, Brian J. Wanca, Anderson & Wanca, Rolling Meadows, IL, for Plaintiffs William Kelsey Hutchings Jr., Barrie Dempsey.

Patrick J. Solberg, Anderson & Wanca, Rolling Meadows, IL, for Plaintiff Adam Holdridge.

Annalisa Christina Kolb, Taft Stettinius & Hollister LLP, Colorado Springs, CO, Daniel T. Rockey, Bryan Cave Leighton Paisner LLP, San Francisco, CA, Martha Kohlstrand, Bryan Cave Leighton Paisner LLP, Colorado Springs, CO, Stephen D. Rynerson, Bryan Cave Leighton Paisner LLP, Denver, CO, for Defendant.

Brady Jerome Grassmeyer, Colorado Attorney General's Office, Denver, CO, for Amicus.

Charlotte N. Sweeney, United States District Judge

## ORDER

***1** Before the Court is Defendant Lusha Systems, Inc. (Defendant or Lusha)'s Motion to Dismiss Plaintiff's First Amended Complaint. ECF No. 24. Plaintiffs have filed a response, ECF No. 32, and Defendant has filed a reply, ECF No. 39. The parties have also filed notices of supplemental authorities. ECF Nos. 40, 46–51. The states of Colorado, Delaware, Indiana, Maine, Maryland, Minnesota, Nebraska, Nevada, New Jersey, New Mexico, North Carolina, North Dakota, South Dakota, Washington, and the District of Columbia have filed an amicus brief partially opposing the motion to dismiss. ECF No. 36. For the following reasons, the Court grants in part and denies in part the motion.

## I. BACKGROUND[1]

This action arises from data broker company Lusha's listing of cellular telephone numbers of Colorado residents in an online directory. ECF No. 16, ¶¶ 16, 19, 24, 27. Visitors to Lusha's website can search using directory criteria, such as geographic location. *Id.* ¶ 21. Users with free accounts can receive limited access to individual's contact data, including cellular telephone numbers. *Id.* ¶ 18. Further access is behind a subscription paywall. *Id.*

The cellular telephone numbers of Colorado residents William Kelsey Hutchings, Jr., Barrie Dempsey, and Adam Holdridge are listed in Lusha's online directory. *Id.* ¶¶ 9–12, 25, 38, 48, 58. Lusha did not obtain affirmative consent of Hutchings, Dempsey, or Holdridge to publish their numbers. *Id.* ¶¶ 41, 51, 61. In addition to the named Plaintiffs, the cellular telephone numbers of other Colorado citizens were also published by Lusha in its directory. *Id.* ¶ 65.

On June 18, 2025, Plaintiffs brought this class action lawsuit. ECF No. 1. In their FAC, Plaintiffs claim that Lusha's conduct violated the Prevention of Telemarketing Fraud Act (PTFA), Colo. Rev. Stat. § 6-1-304(4)(a)(I), which provides that:

> On or after September 1, 2005, a person commits an unlawful telemarketing practice if the person knowingly [l]ists a cellular telephone number in a directory for a commercial purpose unless the person whose number has been listed has given affirmative consent, through written, oral, or electronic means, to such listing.

ECF No. 16, ¶¶ 74–82. Lusha has moved to dismiss, arguing that the FAC should be dismissed (1) for lack of Article III and state law standing under Rule 12(b)(1) and lack of statutory standing under Rule 12(b)(6); (2) under Rule 12(b)(6) because Plaintiffs fail to allege that Lusha knowingly published their numbers; (3) under Rule 12(b)(6) because the Colorado Prevention of Telemarketing Fraud Act is unconstitutional; and (4) that Plaintiffs' class claims for statutory penalties should be stricken under Rule 12(f). ECF No. 24.

## II. LEGAL STANDARDS

### A. Federal Rule of Civil Procedure 12(b)(1)

***2** To survive a Rule of Civil Procedure 12(b)(1) motion to dismiss, "a plaintiff must demonstrate that the court has subject-matter jurisdiction." *Audubon of Kan. v. U.S. Dep't of Interior*, 67 F.4th 1093, 1108 (10th Cir. 2023). A Rule 12(b)(1) motion to dismiss "only requires the court to determine whether it has authority to adjudicate the matter." *Kenney v. Helix TCS, Inc.*, 939 F.3d 1106, 1108 (10th Cir. 2019). "The party invoking federal jurisdiction has the burden to establish that it is proper, and there is a presumption against its existence." *Salzer v. SSM Health Care of Okla. Inc.*, 762 F.3d 1130, 1134 (10th Cir. 2014) (internal quotations omitted).

A defendant may challenge subject matter jurisdiction under Federal Rule 12(b)(1) by "facial attack [of] the complaint's allegations." *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1072, 1002 (10th Cir. 1995). When a party brings a facial attack, courts must accept a complaint's allegations as true. *Safe Streets Alliance v. Hickenlooper*, 859 F.3d 865, 877 (10th Cir. 2017).

### B. Federal Rule of Civil Procedure 12(b)(6)

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Allegations are read in "the context of the entire complaint." *Chilcoat v. San Juan Cnty.*, 41 F.4th 1196, 1207 (10th Cir. 2022) (quotation omitted). In evaluating a motion to dismiss, "the court must take as true all well-pleaded facts, as distinguished from conclusory allegations, view all reasonable inferences in favor of the nonmoving party, and liberally construe the pleadings." *Reznik v. inContact, Inc.*, 18 F.4th 1257, 1260 (10th Cir. 2021) (citation modified). A plausible claim is one that allows the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). If a complaint's allegations are "so general that they encompass a wide swath of conduct, much of it innocent," then a plaintiff has failed to "nudge [the] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quotation omitted). In assessing a claim's plausibility, "legal conclusions" contained in the complaint are not entitled to the assumption of truth. *See Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). The standard, however, remains a liberal pleading standard, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Dias v. City & County of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (quotation omitted).

### C. Federal Rule of Civil Procedure 12(f)

Fed. R. Civ. P. 12(f) governs motions to strike: "The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The purpose of Rule 12(f) is to conserve time and resources that would be spent litigating matters that will not impact the case's outcome. *USI Ins. Servs., LLC v. Morris*, No. 22-cv-180-GPG-MDB, 2024 WL 1436316 (D. Colo. Feb. 21, 2024). Motions to strike are disfavored and are only granted in rare circumstances: when the allegations have no bearing on the controversy and the movant can show that it has been prejudiced. *Sierra Club v. Young Life Campaign, Inc.*, 176 F. Supp. 2d 1070, 1086 (D. Colo. 2001). Even if the moving party meets its burden to prove that allegations in a pleading violate Rule 12(f), the Court retains discretion to grant or deny the motion. *Mueller v. Swift*, No. 15-cv-01974-WJM-KLM, 2016 WL 11692343 at *2 (D. Colo. Apr. 14, 2016). "[A]ny doubt about whether the challenged material is redundant, immaterial, impertinent, or scandalous should be resolved in favor of the non-moving party." *Menapace v. Alaska Nat'l Ins. Co.*, No. 20-cv-00053-REB-STV, 2021 WL 2012324 at *5 (D. Colo. May 20, 2021). "Allegations will not be stricken as immaterial under this rule unless they have no possible bearing on the controversy." *Sierra Club v. Tri-State Generation & Transmission Ass'n, Inc.*, 173 F.R.D. 275, 285 (D. Colo. 1997).

## III. ANALYSIS

### A. Standing

***3** Lusha contends that Plaintiffs do not have Article III or statutory standing because Plaintiffs have not alleged misuse of their telephone numbers. ECF No. 24 at 5, 9. The Court agrees with Plaintiffs' argument that they suffered injury-in-fact because their PTFA claim is similar to a common law right of publicity claim. *See* ECF No. 32 at 8.

#### *1. Article III Standing*

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

To establish Article III standing, plaintiffs must first have suffered an "injury in fact" to a legally protected interest. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Second, plaintiffs must establish that the injury is fairly traceable to the challenged action. *Id.* Third, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* (internal quotations and citations omitted). Here, the issue is whether Plaintiffs have established an injury-in-fact.

To constitute an injury in fact, a plaintiff must show that they have suffered or likely will suffer an "invasion of a legally protected interest" that is both (a) "concrete and particularized" and (b) "actual or imminent, not conjectural or hypothetical." *Rocky Mountain Gun Owners*, 121 F.4th at 109 (quoting *Lujan*, 504 U.S. at 560, 112 S.Ct. 2130). For an injury to be "concrete," it "must be 'de facto,' it must 'exist,' and it must be 'real' rather than 'abstract.' " *Id.* (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340, 136 S.Ct. 1540, 194 L.Ed.2d 635 (2016)). Article III standing requires a concrete injury even in the context of a statutory violation. *Spokeo*, 578 U.S. at 341, 136 S.Ct. 1540.

Intangible harms can also be concrete. *Spokeo*, 578 U.S. at 340, 136 S.Ct. 1540. Courts look to history and tradition to determine whether an intangible harm constitutes an injury in fact. *Lupia v. Medicredit, Inc.*, 8 F.4th 1184, 1191 (10th Cir. 2021) (citing *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424, 141 S.Ct. 2190, 210 L.Ed.2d 568 (2021)). This inquiry " 'asks whether plaintiffs have identified a close historical or common-law analogue for their asserted injury.' " *Id.* at 1191 (quoting *TransUnion*, 594 U.S. at 414, 141 S.Ct. 2190). Plaintiffs do not have to identify an "exact duplicate in American history and tradition." *TransUnion*, 594 U.S. at 424, 141 S.Ct. 2190. The alleged conduct need not rise to the degree required at common law as long as it is the "same *kind* of harm recognized at common law." *Lupia*, 8 F.4th at 1192 (citing *TransUnion*). Injuries with a close relationship to traditionally recognized harms include reputational harms, disclosure of private information, and intrusion upon seclusion. *TransUnion*, 594 U.S. at 425, 141 S.Ct. 2190 (citations omitted).

Here, Plaintiffs argue that their PTFA claim has a close relationship to the common law right of publicity. ECF No. 32 at 8. The Court agrees. "[T]he Colorado Supreme Court does not appear to have expressly recognized [a right of publicity]. Assuming it would do so, [the plaintiff would have to establish] that the defendant, without his consent, used his likeness to the defendant's commercial advantage and that defendant's actions in this regard injured him." *Donchez v. Coors Brewing Co.*, 392 F.3d 1211, 1220 (10th Cir. 2004). The Colorado Supreme Court does, however, recognize a similar tort of invasion of privacy by appropriation of another's name or likeness. *Harper v. Biolife Energy Sys., Inc.*, No. 118CV02868DDDSKC, 2020 WL 13444243, at *2 n.6 (D. Colo. Apr. 29, 2020) (treating right of publicity and right of privacy claims together and citing *Joe Dickerson & Assocs., LLC v. Dittmar*, 34 P.3d 995, 997). " 'One who appropriates to his own use or benefit the name or likeness of another is subject to liability to the other for invasion of his privacy.' " *Showler v. Harper's Mag. Found.*, 222 F. App'x 755, 762 (10th Cir. 2007) (quoting the Restatement (Second) of Torts § 652C).

***4** Disclosure of private information is a type of intangible harm traditionally recognized as an injury in fact. *TransUnion*, 594 U.S. at 425, 141 S.Ct. 2190. "Invasion of privacy is a common law cause of action extensively recognized in American jurisprudence ... the tort claim is routinely litigated in cases involving unfair or abusive collection conduct." *Reid v. LVNV Funding LLC*, No. 2:14CV471DAK, 2015 WL 926146, at *3 (D. Utah Mar. 4, 2015) (citations omitted). Under Colorado law, this right to privacy protects the individual interest in avoiding disclosure or personal matters. *In re Dist. Ct., City & Cnty. of Denver, 09CV7235.*, 256 P.3d 687, 690 ("This right includes the power to control what we shall reveal about our intimate selves, to whom, and for what purpose.") (quotations and citations omitted).

Plaintiffs allege that Lusha uses their names and telephone numbers without consent for commercial gain—the same kind of harm traditionally recognized as judicially redressable at common law. Courts in this circuit have found similar injuries justiciable. *See Havenstrite v. Hartford Life Ins. Co.*, No. 08-CV-410GKFPJC, 2008 WL 5450375, at *4 (N.D. Okla. Dec. 31, 2008) (denying motion to dismiss common law claim for misappropriation of identity where "plaintiffs' names and identities had intrinsic value insofar as the package of personal information not otherwise available" allowed defendant to commercially benefit); *Irving Minott, v. Wichita Water Conditioning, Inc.*, No. 18-CV-01656-MSK-SKC, 2020 WL 616359, at *3–5 (D. Colo. Feb. 7, 2020) (denying summary judgment on a misappropriation of likeness claim where defendant used plaintiff's photo for

marketing). Thus, the Court agrees with Plaintiffs that they have met their Article III standing burden.

Lusha also argues that Plaintiffs do not have standing because § 6-1-304(4)(a)(I) was aimed at preventing telemarketing fraud (and not establishing a right of privacy), that there is no right of publicity in a telephone number, and that the compilation of Plaintiffs' numbers with other personal identifying information does not violate § 6-1-304(4)(a)(I). ECF No. 39 at 5–7. The Court disagrees and finds *Byer v. Buildout, Inc.*, No. 25 CV 12217, 2026 WL 2103957 (N.D. Ill. July 22, 2026), to be persuasive in rejecting those arguments. *See* ECF No. 47.

In that case, a Colorado resident whose number appeared in the defendant's online database without his consent brought a claim under the PTFA. *Byer*, 2026 WL 2103957 at *1. The defendant moved to dismiss based on lack of concrete injury. *Id.* at *2. The Court held that the plaintiff had alleged a harm sufficiently similar to the associated with the common law right of publicity and had Article III standing. *Id.* Section 6-1-304(4)(a)(I) is part of a specific 2005 amendment that necessarily expands the definition of unlawful telemarketing practice beyond solicitations." *Id.* at *3; *see* § 6-1-304(4)(a)(I) (providing that the listing of telephone numbers "for a commercial purpose" is an "unlawful telemarketing practice"). "The statutory text plainly addresses an 'individual's control of information concerning his or her person.' " *Byer*, 2026 WL 2103957 at *3 (quoting *U.S. Dep't of Just. v. Reps. Comm. For Freedom of Press*, 489 U.S. 749, 763, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989)); *see Mostellar v. City of Colorado Springs*, 587 P.3d 168, 172 ("In interpreting statutory provisions, [ ] we begin with the language employed, and we give words and phrases their plain and ordinary meanings. If the language of a provision is unambiguous, then we apply it as written and need not turn to other tools of construction.") (citations omitted). The *Byer* Court also rejected the argument that a telephone number was not name or likeness when used in a directory:

> ***5** [The defendant] does not simply publish a string of phone numbers, divorced from their holders' identities and other identifying information. The phone number is part of an individual profile, connected to (and searchable through) [plaintiff]'s name ... And it's this aggregated data—name and contact information together—that [plaintiff] says generates income for [defendant]. Identifying information like this constitutes a 'textbook example' of likeness.

*Byer*, 2026 WL 2103957 at *3.

Here, the Court agrees with *Byer* and other courts that have concluded that the PTFA is not limited to telemarketing fraud. *See Gargus v. Uplead, LLC*, No. 2:25-CV-08337-MWC-AGR, 2026 WL 121205, at *5 (C.D. Cal. Jan. 13, 2026) ("All that the plain language requires is the listing of a cell phone number in a directory for a commercial purpose."); *Galli v. DemandScience US, LLC*, No. CV 25-13683-LTS, ––– F.Supp.3d ––––, ––––, 2026 WL 2389771 at *3 (D. Mass. Aug. 17, 2026); *Marzo v. Acxiom LLC*, No. 4:25-CV-01317-KGB, 2026 WL 3060610, at *4 (E.D. Ark. Sept. 30, 2026); *but see Schafer et al. v. SalesIntel Research, Inc.*, No. 1:25-cv-1906-PTG-WBP at 5 (E.D. Va. Sept. 29, 2026). Plaintiffs have also sufficiently alleged that the aggregation of their telephone numbers with their names, profession, job title, location, email address, and LinkedIn profile constitutes likeness relative to the right of publicity. ECF No. 16, ¶¶ 38, 48, 58. Like in *Byer*, Plaintiffs allege that Lusha utilizes those information packages to sell a database subscription. *See, e.g.*, ECF No. 16, ¶ 49; *Byer*, 2026 WL 2103957, at *1 ("ProspectNow, an Illinois-based corporation, sells subscriptions to an 'AI based property and owner database.' ") (citation omitted). Accordingly, Plaintiffs have sufficiently alleged a § 6-1-304(4)(a)(I) claim based on Lusha listing of their telephone numbers and therefore have standing.

Lusha's counterarguments are unavailing. Lusha cites several data breach cases that hold that there is no injury where there was no actual misuse of personal data. ECF No. 24 at 9–10; ECF No. 50; *see TransUnion*, 594 U.S. at 437, 141 S.Ct. 2190 (holding that there was no injury without the disclosure of data); *Legg v. Leaders Life Ins. Co.*, 574 F. Supp. 3d 985, 988 (W.D. Okla. 2021) (similar); *C.C. v. Med-Data Inc.*, No. 21-2301-DDC-GEB, 2022 WL 970862, at *4 (D. Kan. Mar. 31, 2022) (holding that there was no injury where plaintiff alleged that her data was uploaded to a public website but was not misused); *McCombs v. Delta Grp. Elecs., Inc.*, 676 F. Supp. 3d 1064, 1073 (D.N.M. 2023) (holding that there was no injury even though plaintiff alleged that she had experienced more spam calls and there was unauthorized access to her bank account because the alleged injuries were not fairly traceable to the data breach). According to Lusha, Plaintiffs' claim fails because Plaintiffs did not allege that their data was actually disclosed. *See* ECF No. 39 at 8–9.

But the FAC contains allegations that Lusha used their personal data for commercial gain without consent, which is precisely the type of misuse protected by the right of

publicity. *TransUnion*, 594 U.S. at 432, 141 S.Ct. 2190 (holding that the disclosure of misleading credit information to third parties established injury in fact because it bore a close relationship with reputational harms associated with the tort of defamation). Although Lusha's cited case *Schafer*, No. 1:25-cv-1906-PTG-WBP, at 5, concludes that the listing of plaintiffs' information in a for-profit directory did not bear a close relationship to the misappropriation of name and likeness, it is an outlier. Moreover, the *Schafer* court only cites data breach cases where the information was not misused and does not discuss cases that analyze the relationship with the misappropriation of likeness. Thus, this case is distinguishable from the cases relied on by Lusha.

***6** Next, Lusha argues that Plaintiffs cannot establish standing for the injunctive relief they seek because they do not allege imminent risk of harm. ECF No. 24 at 10–11. Not so. Although Plaintiffs do not explicitly allege that their injuries are ongoing, the FAC states that "Lusha knowingly *lists* Coloradans' cell phone numbers, including Plaintiffs' cell phone number" and that "Lusha *lists* cellular telephone numbers in its directory for a commercial purpose.... it also *lists* Coloradans' cellular telephone numbers, including Plaintiffs' cellular numbers." ECF No. 16, ¶¶ 77, 79 (emphasis added). Viewing the factual allegations in the light most favorable to Plaintiffs, Lusha currently lists their cellular telephone numbers and their injuries are ongoing.

Thus, Plaintiffs have adequately alleged that they have suffered cognizable injuries under Article III.

*2. State Law Standing and Statutory Standing*

Although Lusha's motion maintains that Plaintiffs do not have statutory standing, ECF No. 24 at 5, the briefing also addresses state law standing. *See* ECF No. 32 at 10– 11; ECF No. 39 at 9–10. The Court will address both. Colorado standing addresses constitutional and prudential concerns, *City of Greenwood Vill. v. Petitioners for Proposed City of Centennial*, 3 P.3d 427, 436, while statutory standing address whether plaintiffs' interests "fall within the zone of interests protected by the law invoked," *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129, 134 S.Ct. 1377, 188 L.Ed.2d 392 (2014) (quotations and citations omitted).

"The relevant state's law of standing should be applied—in addition to federal standing law—in considering claims in [diversity and supplemental jurisdiction] settings that are derived from state law." *Atlas Biologicals, Inc. v. Kutrubes*, 50 F.4th 1307, 1326 (10th Cir. 2022) (citation omitted). Standing in Colorado requires satisfying two requirements. First, similar to federal standing, a plaintiff must demonstrate that he or she will suffer an injury in fact from the challenged action. *Id.* 1327 (citing *City of Greenwood*, 3 P.3d at 437). Colorado also recognizes intangible harms. *Id.* Second, a plaintiff must demonstrate that the injury he or she has suffered is to a legally protected right. *Id.*

As to the first element, Plaintiffs have adequately plead that they have suffered an intangible harm under Colorado law. *See Adinoff v. RELX, Inc.*, No. 25 CV 32408 (Denver Dist. Ct. 2026) ("Plaintiff has standing under [the PTFA] because it provides her with a legally protected interest, the violation of which is an injury-in-fact as established by the statute.")[2]; *Cochrane v. Zenleads, Inc.*, No. 25-CV-04970-WHO, ––– F.Supp.3d ––––, ––––, 2026 WL 2686744, at *2 (N.D. Cal. Sept. 14, 2026) (holding that Plaintiff suffered an injury under Colorado law when "she was deprived of her legal right to control who lists her cellular telephone number in a directory for commercial purposes."). Plaintiffs' allegations of cognizable Article III injuries further bolster the conclusion. *See Atlas Biologicals*, 50 F.4th at 1326 (explaining that similar considerations underlie both Colorado and federal standing law); *City of Greenwood*, 3 P.3d at 436 n.7 (noting that Colorado courts frequently consult federal cases for persuasive authority); ECF No. 39 ("There are some differences between [federal and state standing], but none are relevant here").

Turning to the second element of Colorado standing, the Court first notes that it is substantially similar to statutory standing; that is "whether the plaintiff has a claim for relief under the constitution, the common law, a statute, or a rule or regulation." *Atlas Biologicals*, 50 F.4th at 1327; *compare with Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128, 134 S.Ct. 1377, 188 L.Ed.2d 392 (2014) (explaining that the statutory standing inquiry is whether the plaintiff has a cause of action under the statute).

***7** The Colorado Consumer Protection Act (CCPA), of which the PTFA is a part, requires that private plaintiffs demonstrate:

> (1) that the defendant engaged in an unfair or deceptive trade practice; (2) that the challenged practice occurred in the course of defendant's business, vocation, or occupation; (3) that it significantly impacts the public as actual or

potential consumers of the defendant's goods; (4) that the plaintiff suffered injury in fact to a legally protected interest; and (5) that the challenged practice caused the plaintiff's injury.

*Dean Witter Reynolds Inc. v. Variable Annuity Life Ins. Co.*, 373 F.3d 1100, 1112 (10th Cir. 2004) (citing *Hall v. Walter*, 969 P.2d 224, 235 (Colo. 1998)). Lusha argues that Plaintiff has not met the fourth and fifth elements because Plaintiffs have not alleged injuries in fact and cites *Hall*, 969 P.2d at 230, for the principle that a plaintiff cannot state a claim under the PTFA without an injury. ECF No. 24 at 6. But the named Plaintiffs here allege specific harm to them by Lusha and not merely statutory violations. As discussed above, the FAC contains sufficient factual allegations that demonstrate concrete harm under federal and state law. *See also Cochrane*, ––– F.Supp.3d at ––––, 2026 WL 2686744, at *2. Accordingly, Plaintiffs' PTFA claim cannot be dismissed for lack of statutory standing or state law standing.

**B. Plaintiffs Sufficiently Allege that Lusha Knowingly Listed their Cellular Telephone Numbers**

Lusha argues that the FAC does not contain sufficient allegations that Lusha knowingly published Plaintiffs' cellular telephone numbers, as required by the PTFA. ECF No. 24 at 11–12. As to Hutchings and Dempsey, Lusha argues that the FAC does not allege that Lusha knew that their phone numbers were cellular numbers because their numbers were labeled as "Phone," rather than "Mobile" or "Direct." ECF No. 24 at 12. Holdridge's number was labeled as "Mobile," but Lusha maintains that Plaintiffs fail to allege who labeled the number, including whether the agent was a human or algorithm, and if the agent possessed the requisite knowledge. *Id*.

Under the CCPA, "knowingly" requires actual knowledge. *Przekurat by & through Przekurat v. Torres*, 428 P.3d 512, 516 (Colo. 2018) (citing *State ex rel. Suthers v. Mandatory Poster Agency, Inc.*, 260 P.3d 9, 14 (Colo.App. 2009)). Plaintiffs "must allege facts sufficient to support the inference that [Lusha] knowingly" violated the PTFA. *Crowe v. Tull*, 126 P.3d 196, 211 (Colo. 2006).

Here, Plaintiffs have not met that burden with respect to Hutchings and Dempsey. The facts do not allow the Court to draw the inference that Lusha knew that their listed numbers were cellular. Accordingly, the claims asserted by Hutchings and Dempsey are dismissed without prejudice to their right to amend the complaint.

With respect to Holdridge, the Court concludes that it is not necessary for Plaintiffs to identify which agent labeled his number as "Mobile." *See W. Diversified Servs., Inc. v. Hyundai Motor Am., Inc.*, 427 F.3d 1269, 1276 (10th Cir. 2005) ("It is well established that a corporation is chargeable with the knowledge of its agents and employees acting within the scope of their authority."). Thus, Plaintiffs sufficiently allege that Lusha knowingly violated the PTFA as to Holdridge.

**C. First Amendment**

***8** Lusha argues that the PTFA does not comply with the First Amendment because it is a content-based restriction on speech that is subject to strict scrutiny. ECF No. 24 at 12. Plaintiffs and amici do not contest that the PTFA is content-based and instead argue that the PTFA regulates commercial speech and passes intermediate scrutiny. ECF No. 32 at 12–15; ECF No. 34-1. For the reasons set forth below, the Court agrees with Plaintiffs and amici.

As an initial matter, the Court must address the nature of Lusha's challenge. Lusha purports to bring a facial challenge to the PTFA. ECF No. 24 at 13–15. For a traditional facial challenge to succeed, there must be no set of circumstances that exist under which the law would be valid, or the law must lack " 'a plainly legitimate sweep.' " *Rio Grande Found. v. Oliver*, 154 F.4th 1213, 1221 (10th Cir. 2025) (quoting *Americans for Prosperity Foundation v. Bonta*, 594 U.S. 595, 615, 141 S.Ct. 2373, 210 L.Ed.2d 716 (2021)). In the First Amendment context, a second type of facial challenge has been recognized, " 'whereby a law may be invalidated as overbroad if a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.' " *Id.* (quoting *United States v. Stevens*, 559 U.S. 460, 473, 130 S.Ct. 1577, 176 L.Ed.2d 435 (2010)). Regardless of the form of the facial challenge, the Supreme Court has emphasized that such challenges are disfavored. *Pino v. Oliver*, 186 F.4th 750, 759 (10th Cir. 2026) (citing *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 450, 128 S.Ct. 1184, 170 L.Ed.2d 151 (2008)).

Lusha did not brief these standards and instead relied solely on the argument that the PTFA was subject to strict scrutiny as a content-based restriction on speech.[3] Accordingly, the Court will treat it as an as-applied challenge and evaluate whether the application of the PTFA to Lusha is a restriction on commercial speech. *See Acxiom LLC*, 2026 WL 3060610,

at *6 (analyzing as-applied challenge where the parties did not address the facial challenge standards); *DemandScience US, LLC*, ––– F.Supp.3d at ––––, 2026 WL 2389771, at *7 (similar).

The First Amendment's Free Speech Clause provides that "Congress shall make no law... abridging the freedom of speech," U.S. Const. amend. I, and applies to states and their political subdivisions by incorporation through the Fourteenth Amendment, *Chaplinsky v. State of New Hampshire*, 315 U.S. 568, 570–71, 62 S.Ct. 766, 86 L.Ed. 1031 (1942). In general, restrictions on speech based on its content are presumptively invalid and subject to strict scrutiny. *See* *Ysursa v. Pocatello Educ. Ass'n*, 555 U.S. 353, 358, 129 S.Ct. 1093, 172 L.Ed.2d 770 (2009). However, regulations that impose more stringent restrictions on commercial speech than they do on non-commercial speech are content-based regulations are subject to intermediate scrutiny rather than strict scrutiny. *Cozy Inn, Inc. v. City of Salina, Kansas*, No. 24-CV-01027-TC, 2025 WL 3223806, at *13 (D. Kan. Nov. 19, 2025) (quoting *Aptive Env't v. Town of Castle Rock*, 959 F.3d 961, 987 (10th Cir. 2020)).

The Supreme Court has identified three characteristics to determine whether the speech is commercial: (1) it is an advertisement; (2) it references a specific product; and (3) it is made with economic motivation. *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 66–67, 103 S.Ct. 2875, 77 L.Ed.2d 469 (1983). None of these characteristics alone compel the conclusion that the speech is commercial, and courts have taken a "holistic and function" approach to identifying speech that broadly advertises a product. *KetoNatural Pet Foods, Inc. v. Hill's Pet Nutrition, Inc.*, 181 F.4th 1069, 1078–79 (10th Cir. 2026); *see also* *Bolger*, 463 U.S. 60, 68, 103 S.Ct. 2875 ("Nor do we mean to suggest that each of the characteristics present in this case must necessarily be present in order for speech to be commercial.").

***9** The Court agrees with Plaintiffs, amici, and several recent opinions from other District Courts, that the PTFA's application to Lusha constitutes a regulation of commercial speech. *See* *Cochrane*, ––– F.Supp.3d at ––––, 2026 WL 2686744, at *5 (N.D. Cal. Sept. 14, 2026) (explaining that no court has ruled that the PTFA fails strict scrutiny as a content-based regulation of protected speech); *Uplead, LLC*, 2026 WL 121205, at *6 (holding that the PTFA regulates commercial speech); *DemandScience US, LLC*, ––– F.Supp.3d at ––––, 2026 WL 2389771, at *8; *Acxiom LLC*, 2026 WL 3060610, at *6 (same). Lusha lists Plaintiffs' cellular telephone numbers to advertise a paid subscription for unlimited access.[4] *See* *KetoNatural*, 181 F.4th at 1078 ("[N]on-core commercial speech does more than merely propose a commercial transaction; it broadly promotes or advertises a product or good.") (citations omitted).

Lusha's reliance on *Dex Media W., Inc. v. City of Seattle*, 696 F.3d 952 (9th Cir. 2012), and other cases for the notion that strict scrutiny applies to telephone listings in a directory is misplaced. ECF No. 24 at 13. As one court recently explained, those cases are distinguishable because they address listing of information in directories, including commercial directories, instead of circumstances where the listings are used as advertising. *See* *Byer*, 2026 WL 2103957, at *5 (N.D. Ill. July 22, 2026) (distinguishing *Dex Media*). Where the listings are used as "teasers" to advertise the database itself, they become commercial speech. *Id.* at *5–6 (drawing comparisons to the right of appropriation's commercial use requirement); *compare with* *Atlas Data Priv. Corp. v. We Inform, LLC*, 758 F. Supp. 3d 322, 334 (D.N.J. 2024) (concluding that law without commercial use requirement did not regulate commercial speech). As discussed above, Plaintiffs allege that Lusha incentivizes subscription purchases by allowing limited free access to the full directory. Thus, the Court concludes that commercial speech is at issue and intermediate scrutiny applies.

As noted above, Lusha posed no argument as to intermediate scrutiny. Regardless, the Court agrees with Plaintiffs, amici, and other courts, that the PTFA survives intermediate scrutiny. *See* *Cochrane*, ––– F.Supp.3d at ––––, 2026 WL 2686744, at *5 (concluding that the PTFA survives intermediate scrutiny when defendant did not address the test); *Watts v. Home Depot U.S.A. Inc.*, No. 17-CV-1320-WJM-MEH, 2019 WL 1077369, at *4 n.3 (D. Colo. Mar. 7, 2019) ("The Court need not consider issues not raised or briefed by the parties."); *Tadlock v. Marshall Cnty. HMA, LLC*, 603 F. App'x 693, 704 (10th Cir. 2015) ("[A]rguments not raised before the district court are waived on appeal."). Colorado has a substantial interest in protecting consumer privacy and preventing fraud. *See* ECF No. 32 at 15; ECF No. 36 at 12 (citing *Edenfield v. Fane*, 507 U.S. 761, 769, 113 S.Ct. 1792, 123 L.Ed.2d 543 (1993). And the PTFA is proportional to that interest. *See* ECF No. 36 at 18 (discussing the PTFA's nonconsent and commercial purpose requirements); *Byer*, 2026 WL 2103957, at *8–9. Accordingly, the PTFA is not dismissed on the grounds of unconstitutionality.

**D. Class-Wide Statutory Penalties**

Finally, Lusha asserts that Plaintiffs' class claims for statutory penalties should be stricken. ECF No. 24 at 15. The Court disagrees. Lusha relies on Colorado Revised Statute § 6-1-113(2.9), which provides that "[i]n a case certified as a class action, a successful plaintiff may recover actual damages, injunctive relief allowed by law, and reasonable attorney fees and costs," to argue that statutory penalties are not available in CCPA class actions. It is true that § 6-1-113(2.9) does not explicitly provide for class-wide statutory penalties. But § 6-1-305(1)(c) mandates statutory penalties without distinction between class-wide or individual relief:

> ***10** A person who engages in any unlawful telemarketing practice as defined in section 6-1-304(4) shall be liable in a private civil action to the owner of the cellular telephone for consequential damages, court costs, attorney fees, and a penalty in the amount of at least three hundred dollars and not more than five hundred dollars for a first offense and at least five hundred dollars and not more than one thousand dollars for a second or subsequent offense.

Moreover, § 6-1-305(1) is clear that this relief is available "*[i]n addition* to the remedies available under sections 6-1-110, 6-1-112, and 6-1-113." Thus, the Court agrees that Plaintiffs' class claims for statutory penalties cannot be dismissed or stricken on these grounds. *See Byer*, 2026 WL 2103957, at *9 (concluding that Plaintiffs could bring class claims for statutory penalties under the PTFA); *DemandScience US, LLC*, ––– F.Supp.3d at ––––, 2026 WL 2389771, at *12 (same); *Cochrane*, ––– F.Supp.3d at –––– – ––––, 2026 WL 2686744, at *3–4 (same); *Acxiom LLC*, 2026 WL 3060610, at *7 (same).

**IV. CONCLUSION**

For the reasons above, the Court GRANTS IN PART and DENIES IN PART the Defendant Lusha's Motion to Dismiss Plaintiff's First Amended Complaint, ECF No. 24. The claims as to Hutchings and Dempsey are dismissed without prejudice.

**All Citations**

--- F.Supp.3d ----, 2026 WL 3372124

Footnotes

1 The following facts are drawn from Plaintiffs' First Amended Complaint (FAC). ECF No. 16. For purposes of this motion, the Court accepts as true, and views in the light most favorable to Plaintiffs, all factual allegations contained in the complaint. *See Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009).

2 *See also League of Women Voters of Greeley, Weld Cnty., Inc. v. Bd. of Cnty. Commissioners of Cnty. of Weld*, 563 P.3d 1192, 1197 ("Injury-in-fact includes the deprivation of legal rights.") (citations omitted).

3 And even if Lusha did, the Court is skeptical that it would succeed. *See Byer*, 2026 WL 2103957, at *6–7 (N.D. Ill. July 22, 2026) (holding that the PTFA is constitutional in at least one of its applications).

4 Moreover, the PTFA only regulates listing of numbers for a commercial purpose. *Compare with Jackson v. Thomson Reuters Am. Corp.*, ––– F.4th ––––, ––––, 2026 WL 3211190, at *7 (4th Cir. Oct. 27, 2026) (holding that law which prohibited publication of unlisted telephone numbers of a covered government employee was not commercial speech because "only *some* of the regulated speech would be commercial.") (emphasis original).

End of Document

© 2026 Thomson Reuters. No claim to original U.S. Government Works.